JANVIER, Judge.
This suit results from the same intersec-tional automobile collision which gave rise to the suit of Emmco Insurance Co. v. Mitchell and Robert Lane, the final result of which may be found in our decision reported in 92 So.2d 480.
Mrs. C. Charles Ellish was a guest passenger in a car owned by Mr. and Mrs. Kenneth R. White and which, at the time, was being operated by Mrs. White. That car, at the corner of Poydras and Dryades Streets, in New Orleans, came into collision with a car owned by Mitchell and driven by Lane. In the matter which then came before us we held that the accident had been caused solely by fault on the part of Lane and that Mrs. White had been in no way negligent, and we allowed recovery by Mr. White and by his collision insurer for the damage sustained by his car. In that suit Mrs. Ellish, one of the present plaintiffs, was a witness produced by Mr. and Mrs. White and gave testimony favor *753 able to Mrs. White. In the present suit Mrs. Ellish, as a plaintiff, contends that the fault lay, at least partially, with Mrs. White and that consequently there should be recovery by her and her husband against Mr. and Mrs. White and their liability insurance carrier, American Automobile Insurance Company.
Mrs. Ellish prayed for judgment in the sum of $40,000 for her injuries, suffering, etc., and Mr. Ellish prayed for judgment for $5,363.95, alleging that to be the amount of medical and other related expenses, loss of earnings of Mrs. Ellish, etc.
From a judgment dismissing their suit, Mr. and Mrs. Ellish have appealed.
Mrs. White was operating her car on Poydras Street in the outbound lane. There was a traffic semaphore light at the corner of Dryades Street. -Lane was operating the other car on Dryades Street, going in an uptown ■ direction. The two cars met in the intersection, the White car' striking the car driven by Lane, and the latter continued across the entire width of Poydras Street and came to rest only when it struck an iron post on the uptown lake corner of the intersection.
While it is true that the record now before us is not the same record which was before us when the first case was being considered, and.while it is also true that the author of this opinion, being absent then, did not participate in that earlier decision, a study of the present record convinces us that the facts found by us in the" earlier decision are, by the present record, shown to have been correctly determined.
. Again we have no doubt that Mrsi White was faced by a favorable green light as she entered the intersection and that there was no reason for her to anticipate that Lane would drive his car into the intersection and attempt to cross in front of her.
Counsel for plaintiff argues that Mrs. White does not actually know what occurred since she stated that immediately “she blacked out”.' It is very clear that what Mrs. White meant was that she blacked out as a result of the impact, but that, just before the two cars met, she saw the car driven by Lane suddenly appear from-her right and that she could not stop her car in spite of the immediate application of the brakes. On this point her testimony is as follows:
“Q. You don’t recall the actual impact? A. No, I don’t.
* * * * * *
“Q. Do -you mean by your testimony that you were driving along and having the green light in your favor that you saw something on your right and then you just blacked out? Ai Yes, sir, that’s it.
“Q. Do .you mean that you just blacked out for no reason, just lost consciousness and let the car go? A. It was the impact of the car that caused me to black out. It had to be because I had never felt faint before, I have never passed out before.
“Q. Were you injured in the accident? A. Yes, I was knocked out.”
We find in this case, as we did in our earlier consideration of the facts of this accident, that the testimony of Mrs. Ellish is interesting though not inspiring. When she testified in the earlier case and when she testified in this case she made every possible effort to overcome the effect-of a statement which she had made to the police and a written statement which she had made and signed at the request of an insurance adjuster shortly after the accident and before she realized that she herself might find a way to attempt to have an interest in having- it determined that Mrs. White might have been at fault. In her testimony she said that she could not say just what was the color of the light which faced them as they entered the intersection as her attention was otherwise diverted. However, she had made a statement to the police in which she had said *754 that they were favored by a green light, and she had also made a written statement in which, without any doubt or equivocation, she had said that “the light was green in our favor.”
It is argued that the sworn statement of the witness made on the witness stand should be accepted rather than the un-sworn statement made many months before. The author of this opinion has always entertained the view that the truth is more apt to appear in a statement made at an unsuspicious time when the witness has not yet learned of a possible interest in the outcome than it is to come from a witness who has had time to consider and has discovered the possibility of personal interest.
In this case there can be no doubt that the real truth appears in the written statement which was signed by Mrs. White soon after the occurrence. It is shown by the testimony of a member of the Bar who was a close neighbor and friend of Mrs. White that she called him in to help her edit a written statement which had been prepared and that they went over the statement, made certain eliminations, and that then she signed it. In addition to this statement of this attorney we have also the evidence of his wife who says that she was a close friend of Mrs. Ellish; that she knew that Mrs. Ellish had said that the light was green and that sometime after signing the said statement she had had a conversation with Mrs. Ellish about it and that Mrs. Ellish had said that it is true that she had first said that the light was green, but that she had decided to change the statement and to say that it was red. This witness, Mrs. Hugh Morrison, says that she, referring to Mrs. El-lish, said:
“ * * * that her husband investigated and they found out — well, she had told me originally that she saw the green light that they were going through the green light and she saw the negro heading for them and later on she told me — she changed it. ifc s}: ft
Mrs. Morrison also said that:
“A few weeks later she said you know, that light was red when we got there. I said I thought you said it was green. She said, in the meantime my husband found out that the negro has no insurance and I am going to get some insurance. So, she said, I am going to declare that the light was red. She told me very definitely it was green. Mrs. White was going through it when she saw the negro coming. * * * ”
It is true that Mrs. Ellish denied the statements of Mrs. Morrison and said that what she had told Mrs. Morrison was that the light was green when she had looked at it “last.”
The facts found in our earlier decision are amply supported by this record. The only material difference between the two records lies in the fact that in the earlier case Lane appeared as a witness against Mrs. White and in order to decide in favor of Mrs. White it was necessary that we disregard his testimony. Here we need not disregard his testimony. It is not even in the record.
No useful purpose would be served by a more detailed statement of the evidence. It leaves us convinced that there was no fault on the part of Mrs. White.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.